IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

EXPEDITE, INC.,

Civ. No. 11-329-AC

Plaintiff,

OPINION AND
ORDER

v.

PLUS, BAGS, CARS & SERV, LLC, a
Florida corporation,

Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

Defendant Plus, Bags, Cars & Serv, LLC ("Plus") moves for dismissal of the Second

Amended Complaint of Plaintiff Expedite, Inc. ("Expedite") pursuant to Federal Rules of Civil

Procedure ("Rules") 12(b)(6) and 9(b). Previously, Expedite brought federal antitrust claims against

Plus for violation of the Sherman Antitrust Act and the Clayton Act, and state law claims for

intentional interference with economic relations and fraud.  These claims were dismissed in the

Findings and Recommendation ("F&R") issued by this court and adopted by District Judge Marco

Hernandez on December 19, 2011.  Expedite was, however, granted leave to plead its fraud claim

with greater specificity, and in the interests of judicial economy and convenience, this court chose

to exercise supplemental jurisdiction over that remaining claim.  (F&R 13, 16).  Since that ruling,

all parties have consented to jurisdiction by magistrate judge.  Expedite subsequently filed the

Second Amended Complaint from which this motion arises.  Because Expedite's Second Amended

Complaint fails to sufficiently state the elements of reliance and injury, Plus's Rule 12(b)(6) motion

is GRANTED.  However, in recognition of the fact that Expedite does allege viable theories of fraud

by omission and active concealment and alludes to cognizable theories of reliance, the dismissal is

granted with leave to amend.

*Background*

The alleged facts are taken as true from the Second Amended Complaint.  Since 2000,

Expedite, an Oregon corporation, has operated a baggage claim and delivery service at Portland

International Airport ("PDX").  (Second Am. Compl. ¶ 4, 7.)  Expedite takes lost baggage recovered

by customer airlines and, for a fee, delivers the baggage to its respective owners in Oregon and

Washington.  *Id.* ¶ 7.  As a service vendor, Expedite's only contractual relationship is with the

airlines themselves.  *Id.*  However, these vendor contracts are not directly solicited by the airlines;

rather, airlines utilize sourcing agents to solicit, obtain, and process vendors' bids, ultimately

recommending to the airline which bid to accept.  *Id.* ¶ 10.

Several airlines at PDX used Diversified Services International ("DSI") as their sourcing

agent. *Id.*  In January 2009, Tracy Hoffman, DSI's "Strategic Sourcing Specialist," provided

Expedite and other baggage vendors with an outline of the bidding process. *Id.* ¶ 11.  First, Expedite

was to submit a bid to DSI.  DSI would then forward that bid to the individual airline's corporate

office.  The airline would then notify DSI which vendor they wished to contract with. *Id.*  Hoffman

assured Expedite that all vendors competing for luggage delivery contracts at PDX would be using

exactly the same criteria. *Id.*

On June 1, 2009, DSI was purchased by Plus, a Florida corporation with multiple

subsidiaries. *Id.* ¶ 12.  On June 19, Bags and Cars, Inc. ("Bags"), one of Plus's subsidiaries,

absorbed all DSI's assets, and another Plus subsidiary, Home Serv Delivery, LLC ("Home Serv")

took over DSI's role as sourcing agent for baggage delivery vendors. *Id.* ¶ 12-13.  On July 10, 2009,

Home Serv informed Expedite via e-mail that it was instituting a new "program" for the bidding

process, which included potential vendors meeting new criteria.  In a subsequent e-mail, Home Serv

invited Expedite to bid on a delivery contract with United Airlines. *Id.* ¶ 14, 15.  Over the following

months, in conjunction with the new "program," Expedite sent Home Serv a substantial amount of

information detailing Expedite's delivery rates, corporate structure, and business practices.  Home

Serv requested this information through both a Vendor Information Form ("Form") and as part of

Expedite's unsuccessful November 2009 bid for a contract with Delta Airlines. *Id.* ¶ 20, 23.

According to the Second Amended Complaint, unbeknownst to Expedite, Bags was itself a

baggage delivery vendor, using information obtained by its sister company, Home Serv, to underbid

its competitors and ultimately win the disputed contracts. *Id.* ¶ 16-18.  Plus, therefore, was

ultimately controlling both ends of the bidding process, and utilizing that control to squeeze Expedite

and other delivery vendors out of both prospective and previously held baggage delivery contracts.

In November 2010, Tracy Hoffman – previously of DSI but now employed by Home Serv – sent Expedite a letter stating that Expedite had been removed as Alaska Airlines' baggage delivery vendor and that an "alternative supplier" had been selected.  *Id.* ¶ 29-30.  Ostensibly, this change was made due to cost, service levels, track record, and regional presence, though Expedite had met or exceeded all these criteria.  *Id.* ¶ 30-31.  In reality, the unidentified "alternative supplier" was actually Bags.  Thus, Expedite alleges, one Plus subsidiary selected another Plus subsidiary for the contract under demonstrably false pretenses.  *Id.* ¶ 30.

*Legal Standard*

In a Rule 12(b)(6) motion to dismiss, the scope of the court's review is generally limited to the complaint itself.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010).  The court must construe all well-pleaded factual allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  *Id.* at 998.  However, the pleading standard required by Rule 12(b)(6) has heightened somewhat in recent years, as a result of the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*").  *Twombly* established that mere notice pleading no longer sufficed to state a viable claim:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Id.* at 555 (brackets omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified *Twombly*, laying down two specific principles to guide evaluation of a complaint's legal sufficiency.  First, courts need not accept any of the complaint's legal conclusions – though they remain bound to accept as true all the

complaint's asserted facts. *Id.* at 678. Second, the facts contained in the complaint must support a "plausible" claim for relief. *Id.* at 679. Defining "plausible" has proven to be a considerable challenge, but in general, "plausibility" is not so high a standard as "probability,' though it is more than mere "possibility." *Id.* at 678. Determining plausibility is a context-specific task that requires the reviewing court to draw on judicial experience and common sense. *Id.* at 678, 679. As the Ninth Circuit reiterated in *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009), a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (quoting *Iqbal*, 556 U.S. at 678). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inference from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

However, 12(b)(6) is not the only rule under which Plus seeks to dismiss Expedite's claim. Rule 9(b) requires plaintiffs whose claims are based in fraud to "state with particularity the circumstances constituting fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). When an entire complaint is grounded in fraud but not pleaded with particularity, the court should dismiss that complaint. *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). The level of particularity required by Rule 9(b) is similar to that of a newspaper story: "the who, what, when, where and how of the misconduct charged." *Id.* at 1106. Pleading with an adequate level of particularity also requires the plaintiff to identify both what content in the alleged misrepresentations is false and why that content is false. *Id.* at 1107 (quoting *In re GlenFed, Inc. Sec. Litig.* 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*), *superseded on other grounds by* 15 U.S.C. § 78u-4).

Rule 9(b) does not necessarily dictate *what* elements of fraud must be pled – only *how* they

are pled. *Kearns*, 567 F.3d at 1125 (quoting *Vess*, 317 F.3d at 1103).  When, as here, a state law

fraud claim is brought in federal court, the relevant state law fraud definition applies.  *Id.*  To state

a claim for fraud under Oregon law, a plaintiff must show the following:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of
> its falsity or ignorance of its truth; (5) his intent that it should be acted on by the
> person and in the manner reasonably contemplated; (6) the hearer's ignorance of its
> falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his
> consequent and proximate injury.

*Wieber v. FedEx Ground Package Sys., Inc.*, 231 Or. App. 469, 480 (2009) (quoting *Conselmann*

*v. N.W.P.&D. Prod. Co.*, 190 Or. 332, 350 (1950)).  Failing to adequately plead each element will

result in dismissal of the claim.

*Discussion*

In its Second Amended Complaint, Expedite claims Plus made fraudulent misrepresentations

on three specific occasions: first, in its July 10, 2009, e-mails identifying Home Serv as DSI's

successor company, announcing the institution of a new "program" for handling bids, and inviting

Expedite to bid on a contract with United Airlines;[1] second, by fraudulently obtaining Expedite's

business information through the "Vendor Information From";[2]  and third, through Home Serv's

November 4, 2009, e-mail soliciting bids for a contract with Delta Airlines. *Id.* ¶ 23-27.  Three main

elements of these claims are contested by the parties in this motion: (1) whether Expedite's Second

Amended Complaint meets the heightened pleading standard established by Rule 9(b), (2) whether

Expedite has alleged an actionable theory of fraud, either by affirmative misrepresentation or by

---

[1]Second Am. Compl. ¶ 13-16.

[2]*Id.* ¶ 20-22.

omission, and (3) whether Expedite has – or can – establish the element of reliance.  The court will

consider these disputes in turn with respect to each of the three documents identified by Expedite.

I. The July 10, 2009, E-mail

     *A. The Requirements of Rule 9(b)*

Operating by the "newspaper" standard laid out in *Vess*, 317 F.3d at 1106, Expedite must

state who made the representation at issue, what content in the representation is false, when and

where the representation was made, and how the identified content is false.  As summarized in the

background facts above, Plus sent Expedite's owner two e-mails on July 10, 2009, thus meeting the

"who," "when," and "where" requirements.  The first e-mail informed Expedite that Home Serv was

assuming DSI's role as the airlines' sourcing agent; the second invited Expedite to bid on a contract

with United Airlines.

That second e-mail forms the crux of Expedite's first fraud allegation.  After stating that it

was instituting a new "program" by which bids would be selected, Plus asserted:

> United Airlines is open for bid at PDX (Portland, OR) and will be part of the Home
> Serv Delivery Preferred Program.  An opportunity to participate in the bidding
> process is being offered to you.  As you review the attached RFP, you will find this
> program is a little different than what you are accustomed to.  For example, this new
> service includes VIP Luggage, as well as an 8 bag limit per BDO, with immediate
> exception reporting and POD entry as a requirement.  In order to secure a contract,
> your first step will be submitting a competitive cost savings bid thru [sic] Home Serv
> Delivery.  We will be reviewing the bids, as well as selecting the vendor who will
> service United Airlines.  If you are interested in this business opportunity, complete
> and return the entire attached RFP for our review[.]

(Second Am. Compl. ¶ 15.)  Expedite specifically identifies two statements within that e-mail that

are allegedly false: Plus's offer of "an opportunity to participate in the bidding process," and that

submission of "a competitive cost savings bid" would secure a contract.  *Id.* ¶ 16.  This satisfies the

"what" requirement of Rule 9(b). Because the question of "how" conflates substantially with the analysis of whether Expedite has pleaded an actionable theory of fraud, that issue is discussed in the following section.

*B. Has Expedite Alleged an Actionable Fraud Theory*?

On their face, the statements identified by Expedite appear relatively benign, and Plus correctly notes that nothing in those statements is factually untrue. (Mem. Supp. Mot. to Dismiss Second Am. Compl. ("Def.'s Mem.") at 3.) With respect to the first alleged misrepresentation, Expedite was in fact offered – and even accepted – an opportunity to participate in the bidding process for the United Airlines contract. As for the second, Expedite's allegations go beyond the bounds of believability. Plus never represented that "submitting a competitive cost savings bid" would "secure a contract," and such a claim wholly mischaracterizes the true content of the sentence. Plus asserted nothing more than that submission of a competitive cost savings bid was the *first step* toward securing a contract. (Second Am. Compl. ¶ 15, emphasis added.) Accordingly, the court agrees with Plus that the July 10, 2009, e-mail contained no affirmative misrepresentations.

Nevertheless, literal, factual truth does not exclude the possibility of misrepresentation either by omission or by active concealment, both of which are adequately alleged in Expedite's complaint. Failure to disclose material facts amounts to a misrepresentation when the speaker (or as here, the writer) has made representations that would mislead without full disclosure. *Felonenko v. Siomka*, 55 Or. App. 331, 335, 637 P.2d 1338 (Or. Ct. App. 1981), *aff'd*, 294 Or. 136, 653 P.2d 1263 (1982). Furthermore, there need not always be a duty to disclose for such an omission to be actionable. *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1222 (9th Cir. 1999). This is because "one who makes a representation that is misleading because it is in the nature of a 'half-truth' assumes the obligation

to make a full and fair disclosure of the whole truth." *Gregory v. Novak*, 121 Or. App. 651, 655, 855 P.2d 1142 (Or. Ct. App. 1993).

Turning to the representation at issue here, Plus, through its subsidiary Home Serv, offered Expedite "an opportunity to participate in the bidding process" for the United Airlines contract. In its arguments, Plus focuses on the word "opportunity," but it appears that the real dispute between the parties lies with the meaning of "bidding process" and, more specifically, whether Expedite could reasonably anticipate what Plus meant by using that term. Such an issue is similar to that raised in *Krause v. Eugene Dodge, Inc.*, 265 Or. 486, 505, 509 P.2d 1199 (1973), where a car salesman told a prospective buyer that a car was "new." While true according to a car salesmen's trade standards, the car had in fact been driven at least 5,000 miles prior to purchase. *Id.* at 506. The court held that the buyer was entitled to understand the phrase "new car" by its ordinary meaning, rather than a trade standard. *Id.* at 505.

While Plus correctly notes that it never expressly stated its bidding process would be legitimate, fair, and independent in the same manner as DSI's (whose process in turn conformed to the baggage industry's common business practices[3]), Plus also did not indicate that its process would be substantially *different* from DSI's. Indeed, while expressly stating that the new bidding process would be "a little different than what [bidders] are accustomed to," Plus provided, on its own initiative, examples of a few differences between the its process and DSI's. (Second Am. Compl. ¶ 15.) Those differences appeared minimal: "[f]or example [...] VIP Luggage, as well as an 8 bag per limit BDO, with immediate exception reporting and POD entry as a requirement." *Id.* But while expressly providing these fairly innocuous examples, Plus failed to disclose both that its subsidiary

---

[3] Second Am. Compl. ¶ 9.

Bags would be bidding for contracts in direct competition with Expedite and that Bags might have access to information contained in Expedite's submitted bids. Construing these allegations in the light most favorable to the plaintiff, Plus's representations about the "differences" between their bidding process and DSI's were half-truths, masking the reality that the "bidding process" for the United Airlines contract had in fact changed substantially.

Similarly, allegations of active concealment do not require a duty to disclose in order to be actionable. *Paul v. Kelley*, 42 Or. App. 61, 65, 599 P.2d 1236 (1979). In defining "active concealment," the *Paul* court quoted Prosser's Law of Torts: "[a]ny words or acts which create a false impression covering up the truth . . . or which remove an opportunity that might otherwise have led to the discovery of a material fact." *Id.* at 66. Here, Expedite specifically alleged active concealment with respect to the July 10, 2009, e-mail,[4] and the court finds that allegation sufficiently pleaded. The same statements and corresponding omissions described above as "half-truths" can also plausibly be construed as actions of active concealment: words designed to create the false impression that the bidding process would continue to be independent, impartial, and confidential.

Accordingly, this court finds that Expedite has adequately pleaded two plausible, actionable theories of fraud with respect to Plus's July 10, 2009, e-mail: misrepresentation by omission and active concealment. Because this also meets the "how" requirement of Rule 9(b), the court finds that Expedite has met those heightened pleading standards as well.

*C. Reliance and Injury*

Expedite's adequately pleaded fraud theories effectively eliminate the issues of whether Expedite had the right to rely on Plus's statements and whether Expedite's actions in response to

---

[4]Second Am. Compl. ¶ 39.

those statements were reasonable.  No third party is involved in this case, and Plus does not argue

that Expedite had an obligation to independently investigate the veracity of Plus's representations

about the bidding process.  Misrepresentations and actions of active concealment are, by definition,

attempts to induce reliance, and this court finds the action Expedite ultimately took in response to

Plus's July 10, 2009, e-mail soliciting bids for a contract with United Airlines – submitting a bid –

to be both objectively reasonable and in reliance on Plus's alleged misrepresentations.

That said, Expedite's injury pleadings are tenuous at best.  Expedite focuses on Plus's use

of its concealed position as both arbiter of and bidder on contracts "to unfairly obtain winning bids

and thus profits" by utilizing information obtained from other baggage delivery vendors as part of

the new, undisclosed bidding process.  (Second. Am. Compl. ¶ 18.)  Expedite further contends that

it was losing service contracts "solely because it was being deceptively outbid on the contracts" by

Bags, the Plus subsidiary. *Id.* ¶ 28.  But Plus maintains that there is a causal disconnect between that

reasonable reliance and the injury Expedite alleges. (Def.'s Mem. at 13, 15.)  In sum, Expedite

pleads injury based on its expectation of *would have happened* had the bidding process been

independent, impartial, and confidential, while Plus argues that the proper way to plead injury is to

examine what Expedite would have done had it known the alleged true nature of the bidding process.

On this point, the court agrees with Plus.  Because Expedite has not specifically alleged what

it would have done differently had it known the information concealed by Plus's misrepresentations,

the court is left to infer that Expedite would have refrained from submitting a bid to Home Serv.  But

had Expedite refrained from submitting a bid, the end result would have necessarily been the same:

Expedite would not have been awarded a contract with United Airlines.  In the absence of any

additional facts in the complaint, there is no plausible causative basis to find that Expedite could

have been awarded the contract despite not submitting a bid to Home Serv, the intermediary selected by United Airlines.

Expedite might have a basis to claim injury from Plus's alleged misrepresentations, however. Plus acknowledged at oral argument that if Expedite had pleaded a plausible fraud claim, Expedite could allege damages for the time spent compiling its bid. Also, Expedite alleges – and Plus does not dispute – that prior to Plus's arrival at PDX, Expedite operated a thriving baggage delivery service.[5] Furthermore, Expedite alleges that the sole reason Plus was able to win both the United Airlines contract and subsequent disputed contracts was because Plus opened a bid that Expedite reasonably expected to be sealed and shared the information contained therein with its subsidiary Bags, enabling Bags to outbid its competitors, including Expedite. (Second. Am. Compl. ¶ 18, 22, 28.)

Nonetheless, as currently pleaded, Expedite has not claimed damages for either time spent on the bids or the value of its business information; indeed, its only claim for relief relies on the proposition that, had the bidding process been fair, Expedite would have been awarded the United Airlines contract. This is not a sufficient allegation of reliance nor plausible on the face of the complaint, and Expedite's fraud claim is necessarily dismissed.

II. The Vendor Information Form

Generally speaking, the substantive analysis of the Form is similar to that of the July 10, 2009, e-mail. In the Form, Plus, through its subsidiary Home Serv, allegedly requested that Expedite provide its billing, banking, insurance, resource and driver, business practices, and internal administrative information, as well as its business references, number of employees, future business

---

[5] Second. Am. Compl. ¶ 7.

plans, and delivery rates and areas.  (Second Am. Compl. ¶ 20).  Subsequently, the Form stated, "thank you for taking the time to fill out this company profile as part of the process to become a contracted vendor for HOME SERV DELIVERY LLC."  *Id.* ¶ 21.

Within the entirety of the Form, Expedite adequately identifies a statement it alleges is false: that filling out the form's company profile was part of the process to become a contracted vendor for Home Serv Delivery, LLC.  (Second Am. Compl. ¶ 22.)  Here, as with the e-mail discussed above, Expedite adequately pleads actionable theories of fraud both on the basis of misrepresentation by omission ("half-truths") and active concealment.  Specifically, Expedite alleges that Plus continued to represent that its process for selecting contracted vendors was based on objective, business-based criteria similar to the process used by previous intermediaries such as DSI, and, alternatively, that Plus's representations intentionally created the false impression that the process would remain independent and impartial.  *Id.* ¶ 22, 39.

However, Expedite's claims with respect to the Form suffer from two significant deficiencies.  First, Expedite fails to meet the particularity requirements of Rule 9(b) by not specifying when the form was either sent, filled out, or returned.  Fraud allegations, even if ultimately proven untrue, bring a certain stigma, and Rule 9(b)'s "who, what, where, when, how" requirements ensure that defendants have "adequate notice to allow them to defend the charge." *Kearns*, 567 F.3d at 1125 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)). Here, Expedite's failure to provide the date when Plus allegedly obtained details of Expedite's business practices via the Form deprives Plus of adequate ability to defend that claim.

Second, Expedite's Form claim has the same problems regarding reliance and injury as its claim regarding the July 10 e-mail.  As with the e-mail, Expedite alleges a causal connection

between its submission of the Form and its failure to obtain contracts with the various airlines operating at PDX. However, as with the e-mail, even assuming that Expedite *had* known about Plus's alleged scheme, the court is left to infer that Expedite would simply not have returned the Form to Home Serv – an action that would have kept Expedite from obtaining contracts in any event. Thus, as the complaint is currently pleaded, this court can find no plausible causal basis for reliance and injury. Because of both this factor and Expedite's failure to meet the particularity requirements of Rule 9(b), this claim is dismissed.

III. The November 4, 2009, E-mail

In the November e-mail, Plus ostensibly invited Expedite to bid on a service contract with Delta Airlines:

> Delta Airlines is combining all of their baggage delivery service in your market as part of their merger with [Northwest Airlines]. As a current provider to Delta and/or Northwest we want to extend the opportunity for each of you to provide your best rates to obtain all of the DL/NW combined Baggage Deliveries in your market. We ask that you please provide your best offer up front so we can move quickly to a single award of this contract. . . .
> Home Serv Delivery would like you to bid on this business under the following criteria: Your rates submitted are your best rates available to Home Serv Delivery for this business and no further reductions can be provided.

(Second Am. Compl. ¶ 23). Plus then provided four delivery tiers that were to be included in the bidding criteria. *Id.* From this e-mail, Expedite identifies three specific, allegedly false statements: "we want to extend the opportunity for ... you to provide your best rates to obtain all of the DL/NW combined Baggage Deliveries in your market," "provide your best offer up front so we can move quickly to a single award of this contract," and "Home Serv Delivery would like you to bid on this business under the following criteria." *Id.* ¶ 24.

As with the Form, there is extensive overlap between the substantive analysis of the

November 4, 2009, e-mail and the July 10, 2009, e-mail.  As with that previous e-mail, the court agrees with Plus that no affirmative misrepresentations were made; indeed, all the statements Expedite identifies are factually true.  However, as with the previous e-mail, Expedite can and has adequately pleaded misrepresentation by omission and active concealment.  Plus's language here implies that Expedite had a reasonable, fair chance to obtain the contract, and lays out specific criteria by which the bid was to be won.  It reinforces the idea that the bidding process was independent, impartial, and confidential when, if the court assumes facts in the light most favorable to Expedite, it clearly was not.

However, Expedite's claims here necessarily suffer the same reliance and injury failures as its claims regarding the July e-mail and the Form.  In the absence of any plausible basis for the idea that, by not submitting a bid at all, Expedite would have been awarded the Delta/Northwest contract, the court will not make that unjustified logical leap.

*Leave to Amend*

Amendments to pleadings are governed by Rule 15(a), which provides: "A party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  FED. R. CIV. P. 15(a).  Leave to amend should be granted with "extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  The court is aware that this pleading represents Expedite's third attempt to adequately state a claim for fraud, that a Rule 12(b)(6) motion to dismiss has already been granted once in this case, and that the deficiencies remaining in this complaint are significant – particularly the lack of an adequate causal connection between reliance and injury.  Nevertheless, Expedite's Second Amended Complaint alleges viable theories of fraud and alludes to cognizable theories of reliance damages.

Therefore, while granting Plus's motion to dismiss, the court also grants Expedite leave to amend

its complaint to address the specified deficiencies.

*Conclusion*

For the forgoing reasons, Plus's motion (#50) to dismiss pursuant to Rule 12(b)(6) is

GRANTED without prejudice.

IT IS SO ORDERED

DATED this 17th day of August, 2012.


                                           /s/ John V. Acosta
                                        JOHN V. ACOSTA
                                   United States Magistrate Judge