IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

EXPEDITE, INC.,                                              Civ. No. 11-329-AC

                    Plaintiff,                          OPINION AND
                                                   ORDER

PLUS, BAGS, CARS & SERV, LLC, a
Florida Corporation,

                    Defendant,

_____

ACOSTA, Magistrate Judge:

*Introduction*

      Defendant Plus, Bags, Cars & Serv, LLC ("Plus") moves for dismissal of the Third

Amended Complaint of Plaintiff Expedite, Inc. ("Expedite") pursuant to Federal Rules of Civil

Procedure ("Rules") 12(b)(6) and 9(b).  Previously, Expedite brought federal antitrust claims

against Plus for violation of the Sherman Antitrust Act and the Clayton Act, and state law claims

for intentional interference with economic relations and fraud.[1]  These claims were dismissed in the Findings and Recommendation ("F&R") issued by this court and adopted by District Judge Marco Hernandez on December 19, 2011.[2]  Expedite was, however, granted leave to plead its fraud claim with greater specificity, and in the interests of judicial economy and convenience, this court chose to exercise supplemental jurisdiction over that remaining claim.  Expedite subsequently filed a Second Amended Complaint for fraud.  This court found Expedite's Second Amended Complaint failed to sufficiently state the elements of reliance and injury and Plus's Rule 12(b)(6) motion was granted.  However, Expedite was again granted leave to plead its fraud claim with greater specificity because this court found that Expedite could potentially allege viable theories of fraud by omission and active concealment, as well as cognizable theories of reliance.

Expedite subsequently filed the Third Amended Complaint from which this motion arises.  Because Expedite's Third Amended Complaint sufficiently states a plausible fraud claim, Plus's Rule 12(b)(6) motion is DENIED.

*Background*

The alleged facts are taken as true from the Third Amended Complaint.  Since 2000, Expedite, an Oregon corporation, has operated a baggage claim and delivery service at Portland International Airport ("PDX").  (Third Am. Compl. ¶ 4, 7.)  Expedite takes lost baggage recovered by customer airlines and, for a fee, delivers the baggage to its respective owners in Oregon and Washington.  *Id.* ¶ 7.  As a service vendor, Expedite's only contractual relationship is with the airlines themselves.  *Id.*  However, these vendor contracts are not directly solicited by

---

[1] The Original Complaint was amended to remove Alaska Airlines as a party.
[2] Since that ruling, all parties have consented to jurisdiction by magistrate judge.

the airlines; rather, the airlines utilize sourcing agents to solicit, obtain, and process vendors' bids, ultimately recommending to the airline which bid to accept.  *Id.* ¶ 10.

Several airlines at PDX used Diversified Services International ("DSI") as their sourcing agent.  *Id.*  In January 2009, Tracy Hoffman, DSI's "Strategic Sourcing Specialist," provided Expedite and other baggage vendors with an outline of the bidding process.  *Id.* ¶ 11.  First, Expedite was to submit a bid to DSI.  DSI then would forward that bid to the individual airline's corporate office.  The airline then would notify DSI with which vendor they wished to contract. *Id.*  Hoffman assured Expedite that all vendors competing for luggage delivery contracts at PDX would be using the same criteria.  *Id.*

On June 1, 2009, DSI was purchased by Plus, a Florida corporation with multiple subsidiaries.  *Id.* ¶ 12.  On June 19, Bags and Cars, Inc. ("Bags"), one of Plus's subsidiaries, absorbed all DSI's assets, and another Plus subsidiary, Home Serv Delivery LLC ("Home Serv") took over DSI's role as sourcing agent for baggage delivery vendors.  *Id.* ¶ 12-13.  On July 10, 2009, Home Serv informed Expedite via e-mail that it was instituting a new "program" for the bidding process that added new criteria that potential vendors must meet.  In a subsequent e-mail, Home Serv invited Expedite to bid on a delivery contract with United Airlines.  *Id.* ¶ 14-15. Over the following months, in conjunction with the new "program," Expedite sent Home Serv a substantial amount of information detailing Expedite's delivery rates, corporate structure, and business practices.  Home Serv requested this information through both a Vender Information Form ("Form") and as part of Expedite's unsuccessful November 2009 bid for a contract with Delta Airlines.  *Id.* ¶ 20, 25.

According to the Third Amended Complaint, unbeknownst to Expedite, Bags was itself a baggage delivery vendor, using information obtained by its sister company, Home Serv, to

underbid its competitors and ultimately win the disputed contracts. *Id.* p. 16-18. Plus, therefore, was ultimately controlling both ends of the bidding process, and utilizing that control to eliminate Expedite and other delivery vendors from both prospective and previously held baggage delivery contracts. In November 2010, Tracy Hoffman – previously of DSI but now employed by Home Serv – sent Expedite a letter stating Expedite had been removed as Alaska Airlines' baggage delivery vendor and an "alternative supplier" had been selected. *Id.* ¶ 31-32. Ostensibly, this change was made due to cost, service levels, track record, and regional presence, though Expedite had met or exceeded all these criteria. *Id.* ¶ 32-33. In reality, the unidentified "alternative supplier" was actually Bags. Thus, Expedite alleges, one Plus subsidiary selected another Plus subsidiary for contract under demonstrably false pretenses. *Id.* ¶ 32.

### Legal Standard

In a Rule 12(b)(6) motion to dismiss, the scope of the court's review is generally limited to the complaint itself. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010). The court must construe all well-pleaded factual allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Id.* at 998. However, the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") has changed the pleading standard required by Rule 12(b)(6). *Twombly* establishes that mere notice pleading no longer is sufficient to state a viable claim:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Id.* at 555 (brackets omitted).

In *Ashcroft v. Iqbal*, 556 U.S. (2009), the Supreme Court clarified *Twombly*, with two specific principles to guide evaluation of a complaint's legal sufficiency. First, courts need not

accept any of the complaint's legal conclusions – though they remain bound to accept as true all the complaint's asserted facts. *Id.* at 678. Second, the facts contained in the complaint must support a "plausible" claim for relief. *Id.* at 679. Defining "plausible" has proved challenging for courts, but in general, "plausibility" is not so high a standard as "probability," though it is more than mere "possibility." *Id.* at 678. Determining plausibility is a context-specific task that requires the reviewing court to draw on judicial experience and common sense. *Id.* at 678, 679. As the Ninth Circuit reiterated in *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009), a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (quoting *Iqbal*, 556 U.S. at 678). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content and reasonable inference from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

Rule 12(b)(6) is not the only rule under which Plus seeks to dismiss Expedite's claim. Rule 9(b) requires plaintiffs whose claims are based in fraud to "state with particularity the circumstances constituting fraud." *Kearns v. Ford Motor Co.*, 576 F.3d 1120, 1124 (9th Cir. 2009). When an entire complaint is grounded in fraud but not pleaded with particularity, the court should dismiss that complaint. *See e.g., Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). The level of particularity required by Rule 9(b) is similar to that of a newspaper story: "the who, what when, where and how of the misconduct charged." *Id.* at 1106. Pleading with an adequate level of particularity also requires the plaintiff to identify both what content in the alleged misrepresentations is false and why that conduct is false. *Id.* at 1107 (quoting *In re GlenFed, Inc. Sec. Litig.* 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*), *superseded on other grounds by* 15 U.S.C. § 78u-4).

Rule 9(b) does not necessarily dictate *what* elements of fraud must be pleaded – only *how* they are pled. *Kearns*, 567 F.3d at 1125 (quoting *Vess*, 317 F.3d at 1103). When, as here, a state-law fraud claim is brought in federal court, the relevant state law fraud definition applies. *Id.* To state a claim for fraud under Oregon law, a plaintiff must show the following:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

*Wieber v. FedEx Ground Package Sys., Inc.* 231 Or. App. 469, 480 (2009) (quoting *Conzelmann v. N.W.P.&D. Prod. Co.,* 190 Or. 332, 350 (1950)).

## *Discussion*

### I. Pleading Requirements

In its Order dismissing the Second Amended Complaint (the "most recent order"), the court found three fatal defects that were the cause for granting dismissal: (1) lack of particularity regarding the Vendor Information Form, (2) lack of reliance, and (3) lack of causative nexus to the alleged injury. In its Third Amended Complaint, as in the Second Amended Complaint, Expedite claims Plus made fraudulent misrepresentations on three specific occasions: first, in its July 10, 2009, e-mails identifying Home Serv as DSI's successor company, announcing the institution of a new "program" for handling bids, and inviting Expedite to bid on a contract with United Airlines;[3] second, in the "Vendor Information Form," and third; in the November 9, 2009, e-mail. The distinguishing feature between the Second Amended Complaint and the Third Amended Complaint are four additional paragraphs. The court must examine whether the addition of these four paragraphs to the complaint pleads a plausible claim for fraud.

---

[3] Third Am. Compl. ¶ 13-16

OPINION AND ORDER                                    6                                    {NDW}

The first new paragraph in the Third Amended Complaint alleges that after the Vendor Information Form was sent to Expedite, filled out, and returned to Plus:

> Defendant, through Home Serv Delivery LLC, sent the Vendor Information Form to plaintiff via email from a Michelle Hughey, Sourcing Specialist, dated Friday, July 10, 2009, telling plaintiff there was a deadline to return the completed form by 3:00 p.m. on the next Wednesday, July 15, 2009. Plaintiff then filled out the form between Friday July 10th and Monday July 13th, and submitted the completed Vendor Information Form back to defendant, via an e-mail to Ms. Hughey, on Tuesday, July 14, 2009 by sending it to "Home Serv Delivery, LLC at 33 Grandview Parkway, Suite 111, Traverse City, MI 49684; facsimile 866-699-1183."

(Third Am. Compl. ¶ 23.)

Plus concedes with the addition of paragraph 23, Expedite remedies the first defect and has now sufficiently pleaded a theory of fraud. However, Plus argues that the other two defects cited in the most recent order, the eighth and ninth elements of fraud, reliance and proximate injury, are not addressed. Therefore, we will examine whether reliance and proximate injury were addressed with these four additional paragraphs.

A. Reliance

A plaintiff alleging a fraud claim must plead reliance. *Wieber v. FedExGround Package Sys., Inc.,* 231 Or. App. 469, 480 (2009). In its most recent order, the court found that the causal connection between reliance and injury was tenuous at best. There are three documents that outline Expedite's cause of action, the July 10, 2009 e-mail, the vendor information form, and the November 4, 2009 e-mail. Based on these three documents, Expedite's alleges, had the bidding process with Plus been fair, Expedite would have been awarded contracts with United and Delta Airlines. However, the court found this was not sufficient to allege reliance. The court dismissed the claim with leave to amend to permit Expedite to address the deficiencies in its pleading of reliance and injury.

In its Third Amended Complaint, Expedite adequately pleads reliance. Under *Wieber v. FedExGround Package*, "[d]irect evidence of reliance in support not required; a plaintiff may prevail on a showing that a reasonable inference of reliance can be drawn from the facts in evidence. *Wieber*, 231 Or.App. at 482 (2009) (citing *Strawn v. Farmers Ins. Col.* 228 Or. App. 454, 470 n. 9, *rev. allowed*, 347 Or. 258 (2009).) Expedite now claims if it had known of the "true nature of the bidding process," it would have neither submitted bids nor would it have submitted the Vendor Information Form to Home Serv or any other intermediary service. (Third Am. Compl. ¶ 46-47).

In the second of the new paragraphs in the Third Amended Complaint, Paragraph 24, the plaintiff alleges:

> In essence, the filled out Vendor Form provided a literal "road map" as to exactly how to run plaintiff's business and how to compete with plaintiff using its business information. That information was therefore highly valuable to plaintiff. Defendant's attainment of the information and its illicit use of the information thus constituted a direct and significant business loss to plaintiff.

(Third Am. Compl. ¶ 24.)

In its third new paragraph, Expedite claims it would have contacted the airlines directly, informed the airlines about the rigged process and "directly bargained" with the airlines:

> Had plaintiff known the true nature of the bidding process, plaintiff would have not used any intermediary at all, but in July of 2009 would have gone directly to United Airlines, Alaska Airlines and Delta Airlines, as well as other airline companies at PDX, informed them about the misrepresentations and the rigged bidding process, and directly bargained with those airlines themselves, without utilizing any "go-between," in order to obtain written vendor contracts directly with those companies. Plaintiff could have conducted its normal business and not have lost service contracts, but instead have readily obtained written vendor contracts as required directly with United Airlines, Alaska Airlines, and Delta Airlines, as well as other airline companies at PDX.

(Third Am. Comp. ¶ 46.)

Plus argues Expedite's attempt at addressing the reliance issue, by alleging it would have gone directly to the airlines had it known about the rigged bidding process, lacks plausibility. The court disagrees. While Expedite itself states there is a well-established bidding process, using third-person intermediaries, between the baggage delivery companies and the airlines, this bidding process changed in 2009 when Home Serv took over the bidding process from DSI. From 2000 to 2009, Expedite had been the main baggage claim and delivery service company used by many airlines at PDX. Only after Home Serv took over the bidding process did Expedite lose its bids for contracts with different airlines. Until that time, the bid process appeared to Expedite to have been fairly and impartially administered. It is plausible that Expedite would have directly contacted the airlines if it had learned that Plus, as Expedite alleges, had rigged the bidding process to ensure that its own subsidiary won the bid. At that point, the airlines could have negotiated with Expedite directly or ordered the process repeated to ensure its fairness.

B. Injury

The final element that Expedite must plead is the element of "proximate injury." Proximate injury is defined as "Damage to the plaintiff, *resulting from* [the plaintiff's] reliance [on defendant's representation]." *Knepper v. Brown*, 345 Or. 320, 329 (2008) (quoting *Riley Hill General Contractor v. Tandy Corp.*, 303 Or. 390, 405 (1987) (emphasis added)). In *Knepper*, the Oregon Supreme Court found "proximate cause or proximate injury" equivalent to "reasonable foreseeability." *Id.* at 329-330. The court explained, "Courts have noted that, when an intentional tort is involved, the range of legal causation can be quite broad. 'For an intended injury the law is astute to discover even very remote causation.'" *Id.* at 330 (quoting W. Page Keeton, *Prosser and Keeton on Torts* § 43, 293 n.6 (5th ed. 1984) (citation omitted)).

In *Knepper*, the plaintiff was injured in an allegedly negligent liposuction procedure. The plaintiff not only sued the dermatologist, who performed the liposuction and who claimed to be a board-certified plastic surgeon when he was not, but also sued Dex Yellow Pages for fraud for misrepresenting the dermatologist's qualifications. *Id.* at 331. The plaintiff argued she relied on the Dex Yellow Pages' posting for the dermatologist which stated he was a board-certified plastic surgeon. *Id.* It would have been reasonably foreseeable had she known the dermatologist was not a board-certified plastic surgeon as was advertised, she would not have gotten liposuction from him. *Id.* Her proximate injury from Dex Yellow Pages' fraud was a result of Dex's misrepresentation of the dermatologist's qualifications. *Id.*.

Similarly, here, Expedite relied on Home Serv to fairly administer the bidding process. Like the Dex Yellow Pages' posting in *Knepper* that held out the dermatologist as a board-certified plastic surgeon, Home Serv held out in its communications that the bidding process would be fair. Home Serv represented that it would choose the baggage delivery service based on cost, service levels, track record, and regional presence – all criteria Expedite had met or exceeded. (Third Am. Compl. ¶ 32-33.) It is reasonably foreseeable that Expedite, had it known of the rigged bidding process, would have notified the airlines of the irregularities it alleges here and attempted to negotiate directly with the airlines. Plus argues Expedite's damages are speculative, but under Oregon law Expedite has properly pleaded proximate injury. Expedite lost the opportunity to compete for contracts it had historically won in fairly administered competitive processes and thus lost the revenue from those contracts.

In conclusion, the court finds Expedite's allegations are sufficient to adequately plead reliance and injury.

*Conclusion*

For the forgoing reasons, Plus's motion to dismiss pursuant to Rule 12(b)(6) (#67) is DENIED.

IT IS SO ORDERED

DATED this 18th day of April, 2013.

JOHN V. ACOSTA
United States Magistrate Judge